UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOSEPH R. WILCOX ET AL.                                         CIVIL ACTION

VERSUS                                                          No. 12-2389

MAX WELDERS, LLC ET AL.                                         SECTION I

## ORDER AND REASONS

Before the Court is a motion[1] for summary judgment filed by defendants, Wild Well Control, Inc. and Superior Energy Services, Inc. (collectively, "Wild Well"). Plaintiffs, Joseph R. Wilcox ("Wilcox") and Lisa Wilcox, filed an opposition,[2] to which Wild Well filed a reply.[3] For the following reasons, the motion is **GRANTED**.

## BACKGROUND

The Court assumes familiarity with the general background of this case as set forth in the Court's August 28, 2013 order and reasons, which granted the motion for summary judgment filed by defendant, Max Welders, LLC ("Max Welders") as to plaintiffs' claims against Max Welders under the Jones Act and for unseaworthiness under the general maritime law.[4] In that order and reasons, the Court found that plaintiffs did not demonstrate that Wilcox qualifies as a seaman with respect to Max Welders, his direct employer, because he does not meet one of the two essential requirements for seaman status as defined by the U.S. Supreme Court in *Chandris, Inc. v. Lastis*, 515 U.S. 347, 368 (1995).[5] Specifically, this Court found that there was a genuine issue of material fact as to whether Wilcox contributed to the function of a vessel or to the

---

[1] R. Doc. No. 192.
[2] R. Doc. No. 203.
[3] R. Doc. No. 212.
[4] *See* R. Doc. No. 165, at 1-4.
[5] R. Doc. No. 165, at 5-15.

1

accomplishment of its mission,[6] but the Court found that Wilcox "lacks the requisite connection to a vessel in navigation or to an identifiable group [of] vessels under common ownership or control."[7]

The instant motion asks this Court to find that Wilcox is not a seaman with respect to Wild Well, his borrowing employer. Wild Well contends: "Although Wilcox is the undisputed borrowed employee of [Wild Well], that fact does not transform him into a Jones Act seaman. Instead, . . . the Fifth Circuit has affirmed the holding that a plaintiff either is or is not a seaman as to all employers."[8] To support its argument, Wild Well relies primarily on *New v. Associated Painting Services, Inc.* (*New I*), No. 86-1150, 1987 U.S. Dist. LEXIS 3835 (E.D. La. May 8, 1987) (Arceneaux, J.), *aff'd*, 863 F.2d 1205 (5th Cir. 1989).[9] Wild Well concludes that Wilcox's "argument that becoming a borrowed servant is the equivalent of undergoing a 'permanent change in essential duties or workplace location' is directly rebutted by Fifth Circuit jurisprudence and is contrary to the Supreme Court guidance on the issue."[10] Wild Well does not challenge that Wilcox has raised a genuine issue of material fact with respect to the first prong of the *Chandris* test.

In their opposition, plaintiffs allege: "Wild Well has established a policy of hiring temporary workers by using direct employees of contractors, who they pay a premium. Wild Well does this in lieu of hiring additional crewmembers for its vessels in an attempt to avoid the legal obligations under the Jones Act owed to sea based employee/crew members who Wild Well

---

[6] R. Doc. No. 165, at 6-9.
[7] R. Doc. No. 165, at 15.
[8] R. Doc. No. 192-3, at 1 (internal quotation marks omitted).
[9] This order refers to the district court's and the Fifth Circuit's opinions individually as indicated, and it refers to both opinions collectively as "*New*."
[10] R. Doc. No. 192-3, at 6.

2

'takes to sea.'"[11] In essence, plaintiffs argue that the Court should only look to Wilcox's work as Wild Well's borrowed employee when determining seaman status and that "[h]e also meets the reassignment test, in that Max Welders permanently reassigned [Wilcox] to the *DB Superior Performance* for this entire voyage."[12]

In its reply, Wild Well contends that "Wilcox's arbitrary choice of a selected and limited portion of his employment history to be used for evaluation of seaman status [that is, his time spent as Wild Well's borrowed employee] is completely unsupported by controlling Fifth Circuit and Supreme Court jurisprudence."[13] Wild Well also states that "[t]here is not a shred of evidence to support [the] statement" that Wilcox was "permanently reassigned" to the *DB Superior Performance*,[14] that "Wilcox butchers the analysis of Wild Well's argument based on *New*,"[15] and that the other caselaw cited by Wilcox is distinguishable.

## STANDARD OF LAW

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point

---

[11] R. Doc. No. 203, at 1.
[12] R. Doc. No. 203, at 20.
[13] R. Doc. No. 212, at 1.
[14] R. Doc. No. 212, at 2.
[15] R. Doc. No. 212, at 4.

out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56, the nonmoving party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

Regarding seaman status, the U.S. Supreme Court has identified two essential requirements. First, "an employee's duties must contribut[e] to the function of the vessel or to the accomplishment of its mission." *Chandris*, 515 U.S. at 368 (internal quotation marks omitted). Second, "a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Id.* "'In deciding whether there is an identifiable group of vessels of relevance for a Jones Act seaman-status determination, the question is whether the vessels are subject to common

ownership or control.'" *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 376 (5th Cir. 2001) (quoting *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 556-57 (1997)) (emphasis omitted).

Qualifying as a seaman under the Jones Act[16] is based on an employee's status in relation to a vessel rather than the nature or location of the injury. *See Chandris*, 515 U.S. at 358-64. "Land-based maritime workers do not become seamen because they happen to be working on board a vessel when they are injured, and seamen do not lose Jones Act protection when the course of their service to a vessel takes them ashore." *Id.* at 361. The U.S. Court of Appeals for the Fifth Circuit has "stated that where 'the employee's regularly assigned duties require him to divide his time between vessel and land (or platform),' his status is to be 'determined 'in the context of his entire employment' with his current employer.'" *Lormand v. Superior Oil Co.*, 845 F.2d 536, 540 (5th Cir. 1987) (quoting *Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067, 1075 (5th Cir. 1986)).

"The seaman [status] inquiry is a mixed question of law and fact, and it often will be inappropriate to take the question from the jury." *Papai*, 520 U.S. at 554. "Nevertheless, 'summary judgment or a directed verdict is mandated where the facts and the law will reasonably support only one conclusion.'" *Id.* (quoting *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356 (1991)). However, "'if reasonable persons, applying the proper legal standard, could differ as to whether the employee was a 'member of a crew,' it is a question for the jury.'" *Chandris*, 515 U.S. at 369 (quoting *Wilander*, 498 U.S. at 356).

---

[16] "A Jones Act seaman may also sue the owner of any vessel on which he is working for a breach of the warranty of seaworthiness, regardless of whether the vessel is owned by his employer. Finally, a Jones Act seaman may also sue third parties for general maritime law negligence." *Becker v. Tidewater*, 335 F.3d 376, 387 (5th Cir. 2003) (citation omitted); *see also Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1220-21 (11th Cir. 2011) ("Count II is based on an assertion of 'unseaworthiness,' which is dependent upon Doe's status as a seaman.").

5

**DISCUSSION**

As an initial matter, the Court notes that plaintiffs have not presented any new evidence in connection with their attempt to raise a genuine issue of material fact. *See Anderson*, 477 U.S. at 248. All of the record evidence that plaintiffs cite in their opposition[17] was available and considered by the Court when it granted Max Welders' motion for summary judgment in its August 28, 2013 order and reasons.[18] To the extent that plaintiffs try to reargue matters that have already been decided against them, the Court will not revisit any ruling discussed in the October 31, 2013 order denying plaintiffs' motion to alter or amend.[19] Accordingly, the legal question presented by this motion is whether the seaman status finding that was made with respect to Max Welders should also be applied to Wild Well.

In support of its motion, Wild Well relies primarily on *New v. Associated Painting Services, Inc*. The plaintiff, New, worked for "an independent contractor which . . . itself does not own or lease any offshore rigs or vessels."[20] *New v. Associated Painting Services, Inc.* (*New II*), 863 F.2d 1205, 1207 (5th Cir. 1989). New's direct employer, APS, assigned New "to perform his duties on a variety of vessels, rigs, and land-based facilities owned by . . . unrelated

---

[17] *See* R. Doc. No. 203. The factual arguments advanced by plaintiffs in their opposition to the instant motion are substantially identical to arguments that have already been made to this Court. *See* R. Doc. Nos. 101, 194. Additionally, although plaintiffs attached to their opposition excerpts of the May 16, 2013 deposition of Brandon Dewolfe, see R. Doc. No. 203-3, the entire transcript of that deposition was filed with and considered by the Court when it decided the August 28, 2013 order and reasons, see R. Doc. No. 165, at 14.
[18] *See* R. Doc. No. 165, at 5-15.
[19] R. Doc. No. 214.
[20] *Cf.* R. Doc. No. 165, at 11 ("Wilcox worked at Max Welders' fabrication yard in Gibson, Louisiana, located adjacent to Bayou Black, where various rigs, jackup rigs, barges, liftboats, and vessels would be brought by customers for fabrication/repair work. Wilcox also worked at other locations onshore and offshore performing identical work in furtherance of Max Welders' welding business.") (footnotes omitted).

entities."[21] *Id.* "The district court granted APS's motion [for summary judgment], finding that New was not assigned to a fleet of vessels and therefore was not a Jones Act seaman."[22] *Id.* "SEDCO [New's borrowing employer] then moved for summary judgment on the grounds that New was not a seaman with respect to SEDCO . . . ."[23] *Id.*

In *New I*, the district court found that it was required to "consider the plaintiff's vessel-related work 'in the context of his entire employment with his current employer'" and "found that he was not assigned to a single vessel or identifiable fleet of vessels." 1987 U.S. Dist. LEXIS 3835, at *2-3 (quoting *Barrett*, 781 F.2d at 1075). The court rejected New's attempt to narrow the scope of the court's inquiry "[b]y raising the issue of 'borrowed employee' status, [wherein] the plaintiff apparently contend[ed] that he was a seaman within the context of his seven-day hitch aboard the SEDCO vessel." *Id.* at *2.

The district court also rejected New's argument that "[t]he borrowed servant situation fits within (the) exception carved out by the *Barrett* court." *Id.* at *4 (internal quotation marks omitted). The court stated:

> A plaintiff does not, by becoming the borrowed servant of a vessel owner, evade the Jones Act requirement that an employee must be permanently assigned to, or have performed a substantial portion of his work aboard, an identifiable vessel or fleet of vessels under common ownership or control. *Rather, the plaintiff either is or is not a seaman as to all employers*.

---

[21] *Cf.* R. Doc. No. 165, at 11-12. The Court notes that New "spent about sixty percent of his time [with APS] sandblasting and painting vessels," *New II*, 863 F.2d at 1207, whereas Wilcox's expert alleges that he "worked offshore during the period from 2009-2012," or the entire span of his employment with Max Welders, for "32.33% of the time," R. Doc. No. 66-9, at 3. The Court also notes that New worked for "at least eight unrelated entities" during his employment with APS, *New II*, 863 F.2d at 1207, whereas Wilcox worked for "34 different customers on 191 jobs in the yard, in inland waters, and offshore" during his employment with Max Welders, R. Doc. No. 165, at 11.

[22] *Cf.* R. Doc. No. 165 (granting Max Welders' motion for summary judgment with respect to Wilcox's seaman status).

[23] *Cf.* R. Doc. No. 192.

7

*Id.* (emphasis added). Accordingly, the court found that New was not a seaman with respect to his borrowing employer, SEDCO. *Id.* at *7-8.

In *New II*, the Fifth Circuit affirmed the district court's ruling with respect to seaman status.[24] 863 F.2d at 1207-09. The court stated, "The crucial issue presented to the district court on seaman status was whether New performed a substantial part of his work on a 'fleet' of vessels." *Id.* at 1208 (citing *Barrett*, 781 F.2d at 1074). Agreeing that the group of jobs and vessels to which New was assigned "d[id] not qualify as a fleet," *id.* at 1208, the court ruled, "In reviewing New's entire employment with APS, the district court applied the proper legal standard and correctly dismissed New's Jones Act claims against APS and SEDCO." *Id.* at 1209.

The Fifth Circuit also rejected New's argument "that because SEDCO stipulated that New was its borrowed employee, the *Barrett* exception applies to him."[25] *Id.* at 1208. The court explained:

---

[24] The Fifth Circuit reversed a separate ruling by the district court regarding SEDCO's liability under § 905(b) of the LHWCA. *New II*, 863 F.2d at 1209-10.

[25] It should also be noted that the court in *New I* rejected New's argument based on *Roberts v. Williams-McWilliams Co.*, 648 F.2d 255 (5th Cir. 1981). *See New I*, 1987 U.S. Dist. LEXIS 3835, at *4-7. Plaintiffs advance a similar argument in their opposition, see R. Doc. No. 203, at 10, which this Court has previously rejected, see R. Doc. No. 214, at 3 (citing R. Doc. No. 66).

In support of their argument regarding the Barrett reassignment exception, plaintiffs cite to *Viator v. Gordon's Trucking Co.*, 875 F. Supp. 369 (W.D. La. 1995). In *Viator*, the court found that the Barrett reassignment exception applied to the plaintiff because his "duties changed from driving a crane-truck to piloting a barge." *Id.* at 375. The court also "emphasize[d] that the analysis requires us to consider all of the circumstances of Viator's employment." *Id.* at 376. The court distinguished *Barrett*, stating: "It appears to us that Barrett's vessel related activities were entirely incidental to his welding related work which, but for the location of the fixed platforms in the Gulf, was indistinguishable from many land based welding jobs. Also, it appears that the time Barrett spent on different vessels was sporadic." *Id.* at 373 (citing *Barrett*, 781 F.2d at 1068-69).

The Court finds that *Viator* is distinguishable. In *Viator*, the plaintiff's job responsibilities changed from driving a land vehicle, referred to as a "crane-truck," to navigating a vessel. *Id.* at 375. Wilcox, on the other hand, did welding at sea on an *ad hoc* basis and his offshore work "was indistinguishable from many land based welding jobs." *See id.* at 373; *cf.* R. Doc. No. 165, at 11-12, 14. Furthermore, *Barrett* requires "a new work assignment . . . in which either [the

8

> This ignores the predicate for the *Barrett* exception, a *permanent* change in either his duties or his job assignment. In contrast, whether a worker is a borrowed employee depends on the amount of control exerted over him, not on the type of work he performs. The fact that an employee is borrowed by the owner of a vessel does not make him a Jones Act seaman.

*Id.* at 1208-09 (footnote omitted). The court found that the testimony "that on rainy days SEDCO would assign the APS workers duties inside . . . hardly constitutes the type of permanent shift to seaman's activities that *Barrett* contemplated."[26] *Id.* at 1209. For these reasons, the Fifth Circuit affirmed the district court's ruling. *Id.*[27]

The Court finds that *New* is materially indistinguishable from the present case.[28] Plaintiffs attempt to distinguish *New* on its facts: "Unlike *New*, Mr. Wilcox took on a whole new

---

plaintiff's] essential duties or his work location is permanently changed." 781 F.2d at 1075-76. As discussed in *New II*, the issue of borrowed employee status is a fundamentally different inquiry than the *Barrett* exception, *New II*, 863 F.2d at 1208-09, and as this Court has already found, see R. Doc. No. 165, at 12-15, Wilcox has not produced any evidence that "either his essential duties or his work location . . . permanently changed." See *Barrett*, 781 F.2d at 1075-76.

[26] *Cf.* R. Doc. No. 165, at 14 ("Although Wilcox claims that he was treated as part of the crew for the voyage and that he performed minor tasks on the vessels 'whenever [he] had downtime,' Wilcox, himself, recognized in his deposition that he spent most of his time performing welding services on the platform, and that his 'primary job' was welding and fitting on the platform.").

[27] Several opinions have either explicitly followed or approvingly cited this holding of *New II*. See *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 890 (5th Cir. 1993); *Romain v. Indus. Fabrication & Repair Serv., Inc.*, No. 95-3445, 1998 WL 132765, at *3 (E.D. La. Mar. 20, 1998) (McNamara, J.); *Univ. Ogden Servs. v. Herrmann*, No. 93-4005, 1994 WL 561841, at *3 (E.D. La. Oct. 7, 1994) (Livaudais, J.); *Campbell v. Offshore Pipeline, Inc.*, No. 92-1189, 1993 WL 302705, at *2-3 (E.D. La. July 30, 1993) (Sear, C.J.); *Ralleigh v. Gulf Island-IV, Inc.*, No. 92-1374, 1992 WL 161048, at *3 (E.D. La. June 19, 1992) (Sear, Dist. J.).

[28] In an attempt to avoid the outcome dictated by *New*, plaintiffs allege that "[t]he case most directly on point is [*Papai*, 520 U.S. 548]." R. Doc. No. 203, at 2 As described by plaintiffs, "[i]n *Papai*, a day worker was hired from a union hall in which the worker was to paint the ship itself while docked shore side," and the worker was ultimately found not to be a seaman. R. Doc. No. 203, at 2. Plaintiffs assert, "Implicit in *Papai*'s holding is the fact that if there had been service by the plaintiff aboard the vessel for a sea based voyage the result would have been completely opposite." R. Doc. No. 203, at 2.

Even though the Supreme Court acknowledged that "Jones Act coverage is confined to seamen, those workers who face regular exposure to the perils of the sea," it did not hinge its decision on the type of work that the plaintiff performed. *Id.* at 560. Rather, the Supreme Court

9

vessel related assignment when he became the borrowed employee of Wild Well, not solely because of his borrowed employee status but because of his new duties and dangerous vessel, sea-based assignments."[29] However, the Court has already rejected this argument in its August 28, 2013 order and reasons[30] and, as discussed below, it rejects plaintiffs' new legal arguments relative to the *Barrett* exception.

Furthermore, to the extent that plaintiffs characterize *New*'s holding as "stand[ing] for the proposition that a borrowed employee, as a matter of law, does not meet seaman status [solely] because of the fact of his borrowed employee status,"[31] the Court does not disagree. However, plaintiffs ignore that, as with Wilcox, "[t]he crucial issue presented to the district court on seaman status was whether New performed a substantial part of his work on a 'fleet' of vessels." *New II*, 863 F.2d at 1208. The Court has ruled that plaintiffs "ha[ve] come forward with no evidence demonstrating that at least thirty percent of [Wilcox's] work was spent in the service of a vessel or an identifiable group of vessels under common ownership or control over the course of his entire employment with Max Welders"[32] and, as previously stated, plaintiffs have presented no additional evidence to disturb that finding.[33] *See also id.* at 1209 ("In reviewing New's entire employment with APS, the district court applied the proper legal standard and correctly dismissed New's Jones Act claims against APS and SEDCO.").

---

concluded, "An important part of the test for determining who is a seaman is whether the injured worker seeking coverage has a substantial connection to a vessel or a fleet of vessels, and the latter concept requires a requisite degree of common ownership or control." *Id.* The Supreme Court determined that, just like Wilcox, the plaintiff did not demonstrate the requisite connection to a "fleet" of vessels. *See id.*

[29] R. Doc. No. 203, at 8.
[30] R. Doc. No. 165, at 12-15.
[31] R. Doc. No. 203, at 9.
[32] R. Doc. No. 165, at 12.
[33] *See* R. Doc. No. 203; *see also* R. Doc. Nos. 194, 214.

Accordingly, in light of *New*, the Court finds that Wilcox is not a seaman with respect to Wild Well, his borrowing employer. *New I* unambiguously directs this result: "[T]he plaintiff either is or is not a seaman as to all employers." *New I*, 1987 U.S. Dist. LEXIS 3835, at *4. *New II* affirmed *New I*'s holding with respect to seaman status, and further observed: "[W]hether a worker is a borrowed employee depends on the amount of control exerted over him, not on the type of work he performs. The fact that an employee is borrowed by the owner of a vessel does not make him a Jones Act seaman." *New II*, 863 F.2d at 1208-09. Wild Well has shown, therefore, that it is legally entitled to summary judgment with respect to plaintiffs' Jones Act claims.

Plaintiffs conclude their opposition by rehashing the record and arguments that were before the Court when it decided and issued the August 28, 2013 order and reasons.[34] As noted above, the Court has not been presented with any new evidence that would justify disturbing those findings.

## CONCLUSION

"Seaman status is not coextensive with seamen's risks." *Chandris*, 515 U.S. at 361. Because Wilcox has produced no evidence showing the requisite connection to an identifiable fleet of vessels, no "reasonable persons, applying the proper legal standard, could differ as to whether the employee was a member of a crew." *See Chandris*, 515 U.S. at 369 (internal quotation marks omitted). Accordingly,

---

[34] R. Doc. No. 203, at 13-20.

**IT IS ORDERED** that the motion is **GRANTED**. Plaintiffs' claims under the Jones Act and for unseaworthiness under the general maritime law are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, November 14, 2013.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**