UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOSEPH R. WILCOX ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **No. 12-2389** |
| **MAX WELDERS, LLC ET AL.** | **SECTION I** |

### ORDER AND REASONS

Before the Court is a motion[1] for summary judgment filed by defendants, Wild Well Control, Inc. and Superior Energy Services, Inc. (collectively "Wild Well"). Plaintiffs filed an opposition,[2] to which Wild Well filed a reply.[3] Plaintiffs then filed a sur reply,[4] to which Wild Well filed a response.[5] For the foregoing reasons, the motion is **GRANTED**.

### BACKGROUND

The Court assumes familiarity with the factual and procedural background of the case.[6] In brief, plaintiffs allege that on June 5, 2012, Joseph R. Wilcox ("Wilcox") suffered serious injuries while performing welding services on a fixed platform on the Outer Continental Shelf in the Gulf of Mexico.[7] Plaintiffs allege that Wilcox was welding in a caisson attached to the fixed platform when undetected gases exploded.[8]

Wild Well filed the instant motion for summary judgment with respect to plaintiffs' claims pursuant to § 905(b) of the Longshore and Harbor Workers' Compensation Act

---

[1] R. Doc. No. 206.
[2] R. Doc. No. 219.
[3] R. Doc. No. 222.
[4] R. Doc. No. 234.
[5] R. Doc. No. 238.
[6] *See* R. Doc. No. 165, at 1-4.
[7] R. Doc. No. 165, at 1; R. Doc. No. 1, ¶ 15.
[8] R. Doc. No. 165, at 2; R. Doc. No. 1, ¶ 15.

("LHWCA"), which provides an exception to § 905(a)'s tort immunity and allows an injured offshore worker to recover against a vessel owner for its negligence. Wild Well argues that "because Mr. Wilcox was injured on a fixed platform, it is legally and factually impossible that his injuries resulted from 'vessel negligence.'"[9] Wild Well also contends that none of the alleged negligent actions took place in its capacity as owner of the D/B SUPERIOR PERFORMANCE.[10] Plaintiffs' opposition argues that Wild Well was negligent in a number of respects in its capacity as vessel owner and that these alleged acts of negligence constitute a breach of the duties owed by a vessel to an offshore worker pursuant to § 905(b).[11]

## LAW AND ANALYSIS

### I. Standard of Law

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56, the nonmoving party must come forward with specific facts showing that there is a genuine issue of

---

[9] R. Doc. No. 206-3, at 2.
[10] *See* R. Doc. No. 222, at 1-10.
[11] *See* R. Doc. No. 219. The parties' additional briefing simply expands on these core arguments.

2

material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

II.   **Vessel Owner Negligence**

Under the LHWCA, an employer must pay compensation benefits to a covered employee regardless of whether the employer was at fault. 33 U.S.C. § 904; *Levene v. Pintail Enters., Inc.*, 943 F.2d 528, 531 (5th Cir. 1991). Such compensation is an employee's exclusive remedy against his employer. *Levene*, 943 F.2d at 531. "Section 905(a) affords employers full immunity from tort suits by providing that compensation benefits 'shall be exclusive and in place of all other liability of such employer to the employee . . . .'" *Id.*

"Under 905(b), the same worker may pursue a tort action against the owner of a vessel for acts of negligence." *Id.* Section 905(b) makes clear that the vessel owner may not be sued when the injury was caused by the negligence of those performing stevedoring services, 33 U.S.C. 905(b); *Levene*, 943 F.2d at 532,[12] because the primary responsibility for longshoremen's

---

[12] Section 905(b) provides in pertinent part:

safety rests with the stevedore. *Robinson v. Orient Marine Co.*, 505 F.3d 364, 365 (5th Cir. 2007) (quoting *Singleton v. Guangzhou Ocean Shipping Co.*, 79 F.3d 26, 28 (5th Cir. 1996)). However, following the U.S. Supreme Court's decision in *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156 (1981), the U.S. Court of Appeals for the Fifth Circuit recognized limited circumstances where a vessel owner may be liable to a longshoreman injured during stevedoring operations:

> 1) if the vessel owner fails to warn on turning over the ship of hidden defects of which he should have known.
> 2) for injury caused by hazards under the control of the ship.
> 3) if the vessel owner fails to intervene in the stevedore's operations when he has actual knowledge both of the hazard and that the stevedore, in the exercise of obviously improvident judgment, means to work on in the face of it and therefore cannot be relied on to remedy it.

*Robinson*, 505 F.3d at 365 (quoting *Pimental v. LTD Canadian Pac. Bul*, 965 F.2d 13, 15 (5th Cir. 1992)).

A vessel owner that conducts its own stevedoring operations and employs longshoremen to conduct such operations is subject to the above-mentioned *Scindia* duties with respect to vessel negligence. *Levene*, 943 F.2d at 532-33; *Pichoff v. Bisso Towboat Co.*, 748 F.2d 300, 302 (5th Cir. 1984). However, "[w]hen an employer acts in a dual capacity as vessel owner, the entity retains its immunity for acts taken in its capacity as an employer, but may still be sued 'qua vessel' for acts of vessel negligence." *Levene*, 943 F.2d at 531 (citing *Jones & Laughlin Steel*

---

> In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. . . .

*Corp. v. Pfeifer*, 462 U.S. 523, 532 (1983)); *see Castorina v. Lykes Bros. Steamship Co.*, 758 F.2d 1025, 1032 (5th Cir. 1985) (quoting *Pfeifer*, 462 U.S. at 530); 1 Thomas J. Schoenbaum, Admiralty and Maritime Law § 7-10 & n.24 (5th ed.). Accordingly, the capacity in which the employer/vessel owner acts is "extremely important" with respect to recovery under § 905(b). *Levene,* 943 F.2d at 531.

Courts must "separate the negligence of the shipowner and that of the stevedore, even when the shipowner performs its own stevedoring activities." *Castorina*, 758 F.2d at 1033. The Fifth Circuit explained the danger of blurring the distinction between negligent acts committed as a vessel owner and negligent acts committed as a stevedore employer:

> In this situation, the stevedore's knowledge of dangerous conditions that may have arisen during the cargo operations should not be imputed to the shipowner, nor should the shipowner be deemed to know that the stevedore's actions in dealing with such dangers are obviously improvident. To impute this knowledge to a shipowner-employer would be to hold it liable in tort for damages arising from its negligence as stevedore, and effectively to eliminate the exclusivity provisions of sections 905(a) & (b).

*Id.*

The fact that the vessel owner performs its own stevedoring operations and employs longshoremen does not impose a greater duty of care upon the vessel owner. *Castorina*, 758 F.2d at 1033 ("[T]his duty is neither heightened nor diminished when the longshoreman is employed directly by the vessel."). Nor does the vessel owner's dual function as a stevedore subject it to liability for injuries caused by those performing stevedoring services. *Id.*; *Durr v. Global Marine, Inc.*, 673 F.2d 740, 740 (5th Cir. 1982); *Cavalier v. T. Smith & Son, Inc.*, 668 F.2d 861, 862 (5th Cir. 1982) (affirming the district court's holding that "a longshoreman's suit [against the vessel owner-employer] is barred by the provisions of the LHWCA, however, if the

negligence that caused the injury is attributable to members of the vessel's crew who are performing stevedoring services when the plaintiff is injured").

Finally, it should be noted that the Fifth Circuit has also stated that "although *Scindia* arose in the context of stevedoring operations, the duties it enumerates are not limited to stevedores. . . . *Scindia* defines the duties owed to an injured worker by a vessel owner acting in a dual capacity as employer." *Levene*, 943 F.2d at 533; *see also Hudson v. Schlumberger Tech. Corp.*, 452 F. App'x 528, 532-33 (5th Cir. 2011).

### III. Discussion

Plaintiffs' § 905(b) claims fail because he was injured while he was in a caisson attached to a fixed platform, not while he was on the D/B SUPERIOR PERFORMANCE.[13] In determining the scope of a negligence action pursuant to § 905(b), the Fifth Circuit "has 'decline[d] to fashion a general standard of 'reasonable care' that would require a shipowner to protect against any and all hazards a longshoreman might encounter in the course of his work.'" *McLaurin v. Noble Drilling (US) Inc.*, 529 F.3d 285, 290 (5th Cir. 2008) (Clement, J.) (alteration original) (quoting *Levene*, 943 F.2d at 534). "'Other than the duty to protect against *hazards under control of the ship* . . . , we do not think [the Supreme Court in *Scindia*, 451 U.S. at 167-78, 101 S.Ct. 1614,] imposes any duty on a shipowner to protect against hazards *arising on a separate ship*,' *or anywhere off the vessel*." *Id.* (alterations original) (emphasis added) (quoting *Levene*, 943 F.2d at 534). Wilcox was performing welding work on a fixed platform, which was in no way under control of the D/B SUPERIOR PERFORMANCE, and the hazards that Wilcox

---

[13] *See* R. Doc. No. 165, at 1-2; R. Doc. No. 206-4, at 122 ("Q. Okay. So at some point, you went back out to the platform or you went to the platform? A. Do what, sir? Q. At some point you went to the platform? A. Well, yeah. They flew me with the crane. Where do you think I got blowed up at?").

faced did not arise on the D/B SUPERIOR PERFORMANCE.[14] For this reason alone, Wild Well has no liability to plaintiffs in its capacity as vessel owner pursuant to § 905(b).[15] *See id.*; *see also Jones v. Cooper/T. Smith Stevedoring Co.*, 613 F. Supp. 2d 815, 822 (E.D. La. 2009) (Africk, J.) ("In fact, the Court finds it noteworthy that Jones make no allegations of negligence based on the conditions of the vessel, its gear, or its equipment."); *Bolden v. Superior Energy Servs., LLC*, No. 03-2478, 2003 U.S. Dist. LEXIS 21589, at *15-16 (E.D. La. Nov. 25, 2003) (Zainey, J.) ("Plaintiff clearly has no § 905(b) claim against [defendant] because he was not injured aboard [defendant's] vessel. Plaintiff was injured aboard Exxon's fixed platform when he stepped into a hole.").

Furthermore, even if § 905(b) extends a vessel owner's liability beyond the vessel itself, each of the allegations against Wild Well relate to activities done in its capacity as Wilcox's borrowing employer, not in its capacity as vessel owner. Plaintiffs point to three alleged acts of negligence which they contend were attributable to Wild Well in its capacity as vessel owner. The Court must carefully determine in which capacity Wild Well was acting with respect to each alleged activity. *See Levene*, 943 F.2d at 531; *see Castorina*, 758 F.2d at 1033.

First, plaintiffs assert that "the vessel's safety officer found the presence of gas in the pipes that were being loaded on the cargo barge and failed to take actions to dissipate the gas nor did he warn plaintiff of the presence of gas."[16] Even if such allegations were true, such

---

[14] *See* R. Doc. No. 165, at 1-2; R. Doc. No. 206-4, at 122.
[15] Plaintiffs attempt to avoid this conclusion by citing to *Garrett v. Gutzeit O/Y*, 491 F.2d 228 (4th Cir. 1974), and *Gutierrez v. Waterman Steamship Corp.*, 373 U.S. 206 (1963). *Garrett* was quickly called into question by other courts. *See Kinsella v. Zim Israel Nav. Co.*, 513 F.2d 701, 704 (1st Cir. 1975) ("[W]e find the bold simplicity of [*Garrett*'s] formulation to be misleading."). *Gutierrez* was clarified to limit its breadth in *Victory Carrers, Inc. v. Law*, 404 U.S. 202, 211 (1971), and it is factually distinguishable. Both *Garrett* and *Gutierrez* were decided many years before *Scindia*.
[16] R. Doc. No. 219, at 6.

knowledge was clearly only relevant to Wild Well in its capacity as employer—it relates directly to the job of decommissioning the platform and says nothing about any vessel-related operations. *See Castorina*, 758 F.2d at 1033; *Cooper/T. Smith*, 613 F. Supp. at 822. Accordingly, such actions are not attributable to Wild Well in its capacity as vessel owner.

Second, plaintiffs argue that the cutting tool which was supposed to be used in lieu of the explosives was actually an appurtenance of the vessel, and that vessel negligence is present because "[h]ad the ship's appurtenance not failed, the explosion would not have occurred."[17] However, in *Landry v. G.C. Constructors*, 514 F. App'x 432 (5th Cir. 2013), the Fifth Circuit rejected a similar argument with respect to a large crane that was attached to the barge at issue. The plaintiff argued that "because the Crane was 'affixed' to the Barge, it was a vessel 'appurtenance' under the control of [defendant] as vessel owner," and that the vessel owner was therefore responsible when the plaintiff slipped and fell on its tracks. *Id.* at 438. The Fifth Circuit rejected that argument because the defendant "leased the Crane for construction work" and used it as such, reasoning that the defendant "*as contractor* created the hazard and was in the better position to correct it." *Id.* (emphasis added) (internal quotation marks omitted). Similarly, whether or not the tool used by Wild Well was "connected to the crane and essentially became part of the crane" on the D/B SUPERIOR PERFORMANCE is not determinative because Wild Well only would have used (or not used) the cutting tool in decommissioning the well, not in operating the vessel.[18] Plaintiff does not present any argument or evidence that the cutting tool

---

[17] R. Doc. No. 219, at 6. Plaintiffs also argue in passing that the explosives used were an appurtenance of the vessel. R. Doc. No. 219, at 6.
[18] *See* R. Doc. No. 219, at 6.

served any purpose with respect to actual vessel operations.[19] Accordingly, Wild Well was only responsible for the tool in its capacity as the contractor decommissioning the well.

Third, plaintiffs argue that "Wild Well did not even obtain any valid requisite safety permits" to perform the welding that Wilcox was conducting when he was injured.[20] However, even if Wild Well was negligent in failing to obtain a "hot work permit" for certain welding tasks, as plaintiff contends,[21] Wild Well failed to do so in its capacity as Wilcox's employer. Obtaining permits to ensure the safety of the decommissioning work had nothing to do with the vessel-related operations of the D/B SUPERIOR PERFORMANCE. *Cf Cooper/T. Smith*, 613 F. Supp. at 821 ("Even if Cooper was negligent in failing to conduct a joint meeting to discuss the crane operator's plans for carrying loads and any associated hazards, such negligence occurred in Cooper's capacity as a stevedore employer.").

All of the alleged negligent acts were clearly undertaken by Wild Well in its capacity as Wilcox's employer and as the contractor decommissioning the well, and not in its capacity as vessel owner. Accordingly, plaintiffs may not recover damages from Wild Well for vessel negligence pursuant to § 905(b).

---

[19] *See* R. Doc. No. 219, at 6-7.
[20] R. Doc. No. 219, at 8.
[21] R. Doc. No. 219, at 8-9.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the motion for summary judgment is **GRANTED**. All of plaintiffs' claims in the above-captioned matter pursuant to § 905(b) of the LHWCA are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, February 13, 2014.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**